**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **RORY M. WALSH,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 15-348 (JEB)** |
| **FBI DIRECTOR JAMES B. COMEY, JR.,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Rory Walsh filed this action against the United States, the Federal Bureau

of Investigation, and a cohort of high-ranking government officials.  He alleges a fantastical

farrago of facts stemming from a purported decades-long government conspiracy that includes

harassment, surveillance, break-ins to his house, intimidation, defamation, tampering with his

prescription medication, and so on.  This, moreover, is hardly Walsh's first journey into court.

On the contrary, he has filed suit numerous times over the last decade, each time crossing the

boundaries of imagination into another dimension.  All of those actions have been unsuccessful,

and this one is no different.

Believing his claims patently insubstantial, the Court will grant Defendants' Motion to

Dismiss under Federal Rule of Civil Procedure 12(b)(1).  In addition, to further conserve judicial

and governmental resources, the Court will require Walsh to show cause why a pre-filing

injunction should not issue.

### I.   Background

This time around, Walsh named as Defendants FBI Director James Comey; several other

high-level FBI officials; an Assistant United States Attorney; James L. Jones, the former U.S.

Marine Corps General and National Security Advisor; the FBI; and the United States. He alleges

a number of disjointed causes of action, all deriving from a long-running government-wide

conspiracy. More specifically, according to Walsh, the FBI used warrantless surveillance to

gather the "intelligence" that he and his family were going out for dinner and to rent a movie,

and it then passed this "intelligence" along to Jones, who then drove from Virginia to

Pennsylvania to "strike at the Walsh's [*sic*]." Compl. at 3. Walsh further claims that Jones

"lunged twice" at him, but Plaintiff "held his sons back." See id. Upon attempting to "file [a]

complaint" about this incident with a magistrate judge, Walsh claims that the FBI interfered and

prevented Jones from being arrested. See id. at 3-4. The Bureau also allegedly "took

jurisdiction over Jones's crime, [and] also seized all evidence." Id. at 17. The FBI purportedly

"tail[s] Walsh everywhere [and] break[s] into his car." Id. at 7. It even "posted gunmen in

[Walsh's] parking lot . . . . [;] two armed FBI agents exited their vehicle as if on cue, and

attempted to create an incident with [Walsh and his son.] No warrant, no arrest, just open armed

intimidation." Id. at 14.

This is just the beginning, however. Plaintiff also asserts that the FBI "routinely

intercepts the US Mails, FEDEX, and threatens and intimidates postal workers (specifically

Doug Creech of the Dallastown Post Office) as [the FBI agents] commit their crimes." Id at 5.

One of those "intercepted" letters was a message Plaintiff attempted to transmit to President

Obama, repeating the allegations contained in his Complaint, and urgently requesting an

audience with the President and Attorney General. See id. at 22; id., Exh. aa (Letter of Feb. 28,

2

2015) at 2.  In that letter, Walsh offered "to testify on the Senate floor, and on national TV over Jones [*sic*] incredible crime spree against my family and his continual abuse of the FBI" and noted that he could "be at the White House in a day" if the President granted his request for an audience.  See Letter of Feb. 28, 2015 at 2.  He similarly claims that the FBI interferes with and intercepts his communications with his Congressman.  See ECF No. 40 (Motion for Reconsideration) at 11-12.

Plaintiff also believes that the FBI is interfering with his and his family's medical treatment by dispatching agents to break into his house and "obnoxiously chop up multiple pills, in a blatant demonstration that [Special Agent in Charge George C.] Venizelos and the FBI think they are above the law."  Compl. at 8.  To "prove" this claim, he produced a dark photograph of what appear to be some broken pills next to other whole pills.  See id., Exh. H (image captioned: "Numerous Pills OBNOXIOUSLY Chopped by the FBI").  Walsh also charges the FBI with repeatedly delaying his payments for his son's oral surgery, though it is unclear how the FBI is alleged to have accomplished this.  See id. at 9.

Jones and the FBI, finally, ostensibly conspire together to dictate court actions through a "secret conduit for *ex parte* communications."  Id. at 18 ("Most troubling, Jones also uses the FBI, that protect federal judges, as his secret conduit to dictate court action.").  Relying on these facts, he brings claims under the Fourth and Fifth Amendments, various criminal statutes, the Federal Tort Claims Act, several state statutes, and he seeks three million dollars in compensation.  See id. at 10-12.

Defendants have now moved to dismiss Plaintiff's Complaint.

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim for relief when the complaint "lack[s] . . . subject-matter jurisdiction."   To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims.   See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).   A court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."   Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "For this reason 'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (alterations in original) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).   Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."   Jerome Stevens Pharms. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, L.L.C. v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005) ("[G]iven the present posture of this case – a dismissal under Rule 12(b)(1) on ripeness grounds – the court may consider materials outside the pleadings."); Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.    Analysis**

The Court will first discuss the propriety of dismissal under Rule 12(b)(1) and then address the question of whether a pre-filing injunction should issue.

A.  Rule 12(b)(1) Dismissal

Defendants move to dismiss on a number of grounds, but submit that the entire case may be dismissed for lack of subject-matter jurisdiction.  See Mot. at 7 n.7.  Although this is a tool seldom employed, a court can invoke Rule 12(b)(1) to dismiss a plaintiff's complaint that is "'patently insubstantial,' presenting no federal question suitable for decision."  Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 n.6 (1989)). This standard requires that the "claims be flimsier than 'doubtful or questionable' – they must be 'essentially fictitious.'"  Id.  Claims that fall into this category include "bizarre conspiracy theories, any fantastic government manipulations of [the] will or mind, [and] any sort of supernatural intervention."  Id.  As a general rule, this procedural vehicle is "reserved for complaints resting on truly fanciful factual allegations," while 12(b)(6) dismissals "cull legally deficient complaints."  Id. at 331 n.5.

Countless courts have applied this standard and dismissed cases involving scenarios more appropriate to Rod Serling's "The Twilight Zone."  See e.g., Tooley v. Napolitano, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (claims of "[r]ound-the-clock [unlawful FBI] surveillance" held "not realistically distinguishable from allegations of 'little green men'"); Odemns v. Wal-Mart Stores, Inc., No. 14-1790, 2015 WL 2120634, at *2 (D.D.C. May 6, 2015) (claim that numerous corporate defendants "implanted a 'multifunctional' nano-chip that acts as 'a recorder' and a 'transmitter' in order to 'record [Plaintiff's] thoughts, dreams, words, concepts, and behaviors'"); Backus v. Placer Cnty., No. 12-46, 2012 WL 2562358, at *1 (E.D. Cal. June 29, 2012) (conspiracy claim that government was using plaintiff as "test subject" for "RF wave, microwave and laser assault systems of invisible warfare" and was using "Electronic Monitoring by the use of cyber computer programs which use the cell phone system like radar to locate, stalk and

assault"); Gonzalez v. City of Fresno, No. 11-1458, 2012 WL 174959, at *3 (E.D. Cal. Jan. 20,

2012) (government-wide conspiracy of surveillance, computer hacking, home break-ins, and

intimidation); Rogers v. Obama, No. 12-2652, 2012 WL 5356046, at *1 (E.D. Cal. Oct. 30,

2012) (conspiracy theory alleging that President Obama and the First Lady infected plaintiff with

shingles and committed a list of serious felonies against her); Wilson v. Obama, 770 F. Supp. 2d

188, 192 (D.D.C. 2011) (*pro se* veteran claiming that "'Barack Obama and some of his cohorts'

interrogated him . . . regarding 'military information concerning [his] past obligation to the

submarine fleet,'" which caused his landlord to evict him from his apartment); Bickford v. Gov't

of United States, 808 F. Supp. 2d 175, 178 (D.D.C. 2011) (FBI and cross-government conspiracy

to surveil and harass plaintiff and her minor child, interfere with her medical treatment, and

intercept her mail and other communications); Baszak v. FBI, 816 F. Supp. 2d 66, 67 (D.D.C.

2011) (FBI "engaging in long-term and warrantless surveillance through 'intrusive techniques

such as video and mental surveillance . . . '"); Riles v. Geithner, 693 F. Supp. 2d 1, 2 (D.D.C.

2009) (government officials "are using mind-reading technology to surveil and investigate

[plaintiff's] private affairs, including his sexual habits and his financial dealings; to sabotage his

relationships. . ."); Roum v. Bush, 461 F. Supp. 2d 40, 46 (D.D.C. 2006) (CIA and FBI

conspiracy to poison plaintiff and implant chip in his body, surveil and attempt to assassinate

him, and place "radioactive nano-particles" in household items, such as his toothpaste); Williams

v. Holiday Inn Washington, DC on the Hill, 295 F. Supp. 2d 27, 28 (D.D.C. 2003) (conspiracy

claim against hotel for attempting to assassinate plaintiff by way of poisoned hamburger, and

seeking relief from "neurological manipulation" by all defendants).

        Here, Plaintiff's claims resemble many of those found insubstantial under the Best v.

Kelly standard.  Walsh alleges a decades-long, government-wide conspiracy targeting him and

perpetrated by numerous high-level government officials.  He suspects that the government

intercepts his mail and communications,  see Bickford, 808 F. Supp. 2d at 178, interferes with his

prescription medications, see id., constantly surveils and harasses him and his family, see

Tooley, 586 F.3d at 1009, attempts to assassinate him, see Williams, 295 F. Supp. 2d at 28,

breaks in to his home, see Gonzalez, 2012 WL 174959, at *3, and even substitutes his toothpaste

with another undesirable substance. See Roum, 461 F. Supp. 2d at 46.

Indeed, in a practically identical iteration of this suit in 2012, Chief Judge Richard W.

Roberts dismissed the case in its entirety, relying heavily on Rule 12(b)(1):

> Here, Walsh's FTCA and constitutional claims all center around
> the alleged conspiracy.  Walsh suggests that the conspiracy spans a
> number of states and over 20 years, involves an "ultra secret"
> government agency, surveillance through a clandestine,
> international system of unknown capabilities and questionable
> existence, harassment, and numerous murder attempts.  This is the
> sort of bizarre conspiracy theory that warrants dismissal under the
> Best v. Kelly standard.  Defendants' Rule 12(b)(1) motions to
> dismiss as frivolous Walsh's FTCA and Fourth, Fifth, and Sixth
> Amendment claims will be granted.

Walsh v. Hagee, 900 F. Supp. 2d 51, 58-59 (D.D.C. 2012).  The D.C. Circuit summarily

affirmed this decision in an unpublished opinion.  See Walsh v. Hagee, No. 12-5367, 2013 WL

1729762, at *1 (D.C. Cir. Apr. 10, 2013).

Were this suit the only evidence before the Court, Rule 12(b)(1) dismissal would be

warranted.  Yet, as the Court has mentioned, this action is merely the latest installment in a series

that has run longer than Serling's ever did.  Some examples of prior incarnations have proceeded

thus:

- Walsh v. United States, No. 05-818, 2015 WL 1299584, at *2 n.2 (M.D. Pa. Mar. 23, 2015) (He alleged that James Jones and Naval Intelligence officers broke into his house, stole various items, and placed him under constant surveillance.  The court found that Walsh's motion to re-open the action "lack[ed] merit" and noted that he "provide[d] no evidence in support of his averments.");

- <u>Walsh v. George</u>, No. 14-1503, 2015 WL 404125, at *2, *8 (M.D. Pa. Jan. 29, 2015), (He alleged that James Jones and the FBI "'stalked and struck' at Walsh and his family," intercepted his correspondence, and publicly slandered him. The court took notice of the many prior unsuccessful suits he had filed and denied his motion to amend his claim as "futile.");

- <u>Walsh v. Jones</u>, No. 13-928, 2014 WL 8763339, at *1 (D.D.C. June 3, 2014), <u>aff'd</u>, No. 14-5221, 2015 WL 1606937 (D.C. Cir. Mar. 13, 2015) (He alleged that James Jones and the Secret Service unlawfully broke into his house, smashed his furniture, and chopped his prescription medication. <u>See</u> ECF No. 1 (Complaint) at 4. The Court held that "there is no factual basis whatsoever" for the suit and found it to be "simply another frivolous claim based on a bizarre government conspiracy theory dismissed by Judge Roberts." ECF No. 74 (Order Denying Plaintiff's Motion for TRO) at 1.);

- <u>Walsh v. United States</u>, 571 F. App'x 109, 110-11 (3d Cir. 2014) (He alleged that James Jones, the U.S. Navy, and numerous other government officials: opened his personal mail, attempted to murder him by poisoning him with arsenic, attempted to frame him for espionage, broke into his home and stole several items, and stalked him and his son. The Third Circuit held that the district court did not abuse its discretion in denying his motion to re-open his case as meritless.);

- <u>Walsh v. Hagee</u>, 10 F. Supp. 3d 15, 17-20 (D.D.C. 2013), <u>aff'd</u>, No. 14-5058, 2014 WL 4627791 (D.C. Cir. July 11, 2014) (He alleged that former Marine Corps Commandant Michael Hagee, Director of National Intelligence James Clapper, and many others conspired to harass and assault him and his family. The court denied all of his motions for reconsideration of its previous dismissal of his "bizarre government conspiracy theory" for lack of subject matter jurisdiction.);

- <u>Walsh v. Hagee</u>, 900 F. Supp. 2d 51, 54-55 (D.D.C. 2012), <u>aff'd</u>, No. 12-5367, 2013 WL 1729762 (D.C. Cir. Apr. 10, 2013) (He alleged that Michael Hagee and an "ultra secret" government agency placed him under surveillance and attempted to assassinate him on multiple occasions. The court dismissed the case in its entirety, relying heavily on Rule 12(b)(1).); and

- <u>Walsh v. United States</u>, No. 05-818, 2008 WL 2412968, at *2 n.11 (M.D. Pa. June 10, 2008), <u>aff'd</u>, 328 F. App'x 806 (3d Cir. 2009) (He alleged that James Jones and many others conspired to break into his house, steal his belongings, assault him, monitor his communications, and tamper with his medications. The court found that "Walsh's evidence is woefully insufficient for a reasonable jury to conclude that [Defendant] Jones was involved in the alleged conduct.").

Informed by all of these similarly frivolous claims, the Court is even more convinced that

a Rule 12(b)(1) dismissal should result here.

B.  Pre-Filing Injunction

A mere dismissal here, however, will apparently do little to dissuade Plaintiff from

mounting his hobby horse again in the future. Yet the Court's hands are not tied: in rare cases, it

may issue a pre-filing injunction precluding a plaintiff from filing suit without prior leave of

court. Although Defendants have not sought this remedy, the Court "has an obligation to protect

the 'orderly and expeditious administration of justice,'" In re Powell, 851 F.2d 427, 430 (D.C.

Cir. 1988) (internal citation omitted), and may thus consider the matter *sua sponte*:

> The constitutional right of access to the courts . . . is neither
> absolute nor unconditional.  Courts in this and other circuits have
> been required to respond to prolific *pro se* litigants with
> determination and imagination.  [I]n fashioning a remedy to stem
> the flow of frivolous actions, a court must take great care not to
> unduly impair[ ] [a litigant's] constitutional right of access to the
> courts.  If a litigant, however, continues to abuse the judicial
> process by filing frivolous, duplicative, and harassing lawsuits, a
> Court may employ injunctive remedies to protect the integrity of
> the courts and the orderly and expeditious administration of justice.

Caldwell v. Obama, 6 F. Supp. 3d 31, 49 (D.D.C. 2013), appeal dismissed, No. 14-5085 (D.C.

Cir. July 24, 2014) (internal citations and quotations omitted).

In this Circuit, prior to issuing a pre-filing injunction, a court ordinarily follows a three-

step process: (1) it provides notice and the opportunity to be heard, (2) it develops a record for

review that considers "both the number and content of the [plaintiff's] filings," and (3) it

"make[s] substantive findings as to the frivolous or harassing nature of the litigant's actions."

Smith v. Scalia, 44 F. Supp. 3d 28, 46 (D.D.C. 2014) (internal citation omitted), aff'd, No. 14-

5180 (D.C. Cir. Jan. 14, 2015).

The Court, by Order accompanying this Memorandum Opinion, thus provides Plaintiff

with notice and an opportunity to show cause why an injunction precluding him from filing in

this and any other federal court absent leave of this Court should not issue.  Should he fail to

show cause in briefing and at a hearing on the issue, this Court shall issue a pre-filing injunction.

## IV.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting

Defendants' Motion to Dismiss and requiring Plaintiff to show cause why a pre-filing injunction

should not issue.


*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge


Date: July 13, 2015